May it please the court. My name is Aaron Holt and I represent the appellant, Coleman Tuton. I'm asking this court to reverse the district court's denial of Mr. Tuton's motion to suppress and to vacate his conviction this morning. An important question before the court today is whether the general alert of a drug-detecting canine to the luggage compartment of a commercial passenger bus but not to the luggage itself, under the circumstances presented in this case, provided sufficient probable cause to justify the search of all of the passenger luggage contained in that compartment. I submit that it did not. A related question in this case is whether the evidence that was discovered following this canine sniff should have been suppressed as fruit of the poisonous tree because in this case it involved an initial illegal search by Corporal Goodman of the Arkansas State Police in violation of Mr. Tuton's Fourth Amendment rights. Basically, as the briefs show and as the record shows, Corporal Goodman asked for consent to search the passenger bus after stopping it for a traffic violation, received consent, began to search the luggage compartment underneath the bus, saw what he initially believed to be an abandoned bag without checking with anybody on the bus as to whether anybody claimed it, he decided to open it up and search it, found what he believed to be a hidden compartment or a false bottom, which ended up containing three and a half kilograms of cocaine. He realized that there was a name tag on the bag, stopped his search, and then immediately thereafter called for a canine unit to come. In my reading of the district court's memorandum and order, I did not see a finding either A, that he saw the tag before he opened the bag, or B, that he made an unreasonable look for the tag. Am I right? Your Honor, I'm looking at the district court's order here, and I know that the district court did conclude that Corporal Goodman's manipulation of the outside and inspection of the inside of the bag was an unlawful search. I know. I've read the conclusion. I didn't see what I would consider the essential predicate findings. Okay. I think you may be right from a brief perusal of it here, Your Honor. I don't know that the court specifically went through. Well, the test is unreasonableness. Correct. Yes. And an abandoned bag may be searched. Correct. And the trooper testified that he thought he didn't see a tag, so he thought it was an abandoned bag, so to speak. Right. So what's unreasonable about opening the bag as long as when he found the tag, he quit? Your Honor, I think the implication of the court's conclusion that he improperly manipulated and searched was that he – I think the implication is that he should have checked with the passengers on the bus to see if it was abandoned. Just seeing the bag – See, it seems to me that's an implied negative credibility finding, and we don't – courts shouldn't do that. Well – If they're going to make a negative credibility finding, they should make it. Your Honor, I think that obviously would have made things a lot more clear. Well, it would on this issue, and you can go on. But that's what troubles me about the predicate, if you will, for the district court's analysis, is I don't think the court got the first step right. I'm concerned about that. Okay, Your Honor. I understand the court's concern there, for sure. Again, I would just point out that the circumstances – I think the circumstances point to it being unreasonable, especially in light of the relatively small number of people on the bus. There were, I think, four passengers and the driver on the bus. There were approximately seven pieces of luggage in the luggage compartment. I think it would have been reasonable before deciding that a piece of luggage that clearly had belongings in it, that it didn't belong to anybody, would be to ask the relatively few people there if anybody claimed it. So that's what I would say about that. Again, after performing this search and finding what he was almost certain contained contraband of some kind, the testimony of Corporal Goodman indicated that he said he had never seen anything legal in a hidden compartment before. Sometimes they were empty. I think in this case it would have been fairly obvious that this one was not empty. I think he could tell that there was something in there and he was trying to get into it. Immediately thereafter, he calls for a canine unit. I think that makes this case fairly analogous to United States v. Tahiri, a Ninth Circuit case in which a drug enforcement agent officer was called to a motel. A package had arrived for the person who ended up being the defendant in that case. He opened that package, searched, and found what he believed to be heroin. They tested it. It was heroin. After that, he consulted with an assistant U.S. attorney. The attorney recommended that they call in a drug dog to perform a sniff. They did that. They had a positive alert on the package. And based on that, they got a warrant, and then they seized the contents. I think in a lot of ways that's very similar here. But here, didn't also the officer testify that he was 100% certain that he was going to call for a canine regardless of what he found in his initial perusal of the luggage compartment? That's correct, Your Honor. He did testify to that. And how do we factor that in? Well, Your Honor, I think that, again, the district court mentioned that in its order. It did not specifically credit that. It did not say, you know, it did not find that he would have called for a canine regardless of his findings. And, again, I think just looking at the circumstances of it, he finds this. He realizes that he's done something he thinks he shouldn't have, even by his own testimony. He says his brain started scrabbling as to what do I do next, honestly. That was what he said. And then immediately thereafter, he decides to call for a canine. I think just based on the circumstances of it, again, it's very similar. He's found this bag. He sees that there's something in it. He wants to get into it. He's trying to find any justification he can to. And so he then basically uses it as a post hoc justification for that initial illegal search. And I think that a search first, sniff later policy is not a good policy for law enforcement to adopt. And I think that a finding in favor of the government in this case could possibly encourage that. But the district court must have implicitly credited that, didn't it, by finding that the dog's alert was an independent basis? Probably so, Your Honor. I mean, probably so. Just in the same way that I would say the court implicitly found on the earlier question from Judge Loken that he was unreasonable in searching the bag before determining ownership. And, again, the. . . You're not suggesting that the officer's knowledge of the hidden compartment somehow influenced the dog's sniff, are you? Your Honor, I think that there is a possibility that it could have. Because after he did find the hidden compartment, he did call over the radio and tell everybody else. There is a possibility that the fact that they all knew that, okay, the goal is now to get into this bag. I think that that taints things in some ways. But, again, we do have to concede there was no evidence of any intentional improper cueing of the dog. The video just didn't show that. We can't prove that. All we can do is say that officers should have been extra careful once they had this improperly gained knowledge. They should have been extra careful and made sure that all of the rest of the circumstances truly pointed to probable cause to search this particular bag. And that's the next point I'd really like to turn to, is the fact that when the dog sniffed the compartment, he didn't show any particular interest in the luggage that was there. He returned to what the trooper, or the Corporal Raper, the handler of the dog, referred to as the back wall of the compartment. He kept returning to the bus itself and sniffing there excitedly, up and down the back walls. Can you help us understand sort of the dimensions of this? This is a bus, right? And there's only seven pieces of luggage. But is it a compartment that would have held enough luggage for an entire busload so that there was room for this dog to be wandering around elsewhere than with the luggage? Yes, Your Honor. It was. It was a full passenger bus. It didn't have many passengers. There were three separate doors that opened on the side, along the side of the undercarriage of the bus. And there were three doors on the driver's side as well that would have opened, but they were all closed. So the driver's side doors were closed. All those three are open into the same common compartment that is a large portion of the undercarriage of the bus. And, yes, it would have had enough room to store the luggage for an entire busload of people. This bus just happened to not be packed very well. So, again, when the dog continued to search the bus itself, I would say that, you know, I would contend that that may have provided a probable cause to search some part of the bus, but it didn't provide the specific probable cause needed to search every individual piece of luggage in that compartment. Again, there were not very many on this particular bus, but assume there had been 50 people on the bus and 50 or more pieces of luggage. What the district court found here was that an alert to the compartment in general provided probable cause to search every single individual piece of luggage in there. And that simply doesn't meet the probable cause standard. Did they search them all? They did, Your Honor. They did. They searched all of them, and they found contraband in Mr. Tuton's. But, again, Judge Kelly, one of the cases that I cited in my brief was Doe v. Olson, a recent case of this court, unpublished, that you wrote a dissent in, talking about officers that had a warrant to search what they believed to be a single residence. They got there, and they found that it was divided into multiple individual residences. And what you wrote in that dissent was that, you know, commonly accepted feral laws in that case, in a case like that, probable cause doesn't exist to search every single individual sub-residence when there's only probable cause to search the whole because there's not a fair probability that evidence of a crime is going to be found in each of those particular places. I think that's very similar here. Is it undisputed, then, that the dog did not, let's see, what's the word we want to use, not indicate? Is that the word, mid-range attention to a location? So is it undisputed that that didn't happen to any of the luggage, and it was just the back? Your Honor, it is undisputed that the dog did not give a final indication in accordance with his training to any of the luggage. He didn't give an indication in the parlance of dog handlers. An indication is when he gives that final response where he either stops and stares, stands and stares, or sits and stares at a location. So what's the one next below that? There's an alert. The alert. So no alert on any of the luggage individually? Yeah. The testimony was that the handler pulled the dog back to search the luggage, to sniff the luggage, and the dog sniffed the luggage, and the dog was generally, was excited, according to the handler, from the time he got there. But he sniffed it, but then returned to the back wall of the bus, is what he said. So that was what the dog kept doing, was he was just sniffing the bus itself. Well, he sniffed everything but did not show any particular interest in the luggage, and I think that is undisputed. I don't think the government is going to argue to the contrary. So, again, I would just argue that that's not enough. When you've got all these individual privacy interests of all these people that are on a passenger bus, that's simply not sufficient. Just a general alert to the compartment shouldn't give the government the right to search every single person's luggage in that compartment when they could have done something like pull the luggage out. And this is what they usually do. They usually pull the luggage out and have the dog go over it again, more specifically, and find a specific piece. All the case law I've been able to find on this issue, the dogs do not alert to a general compartment. They alert to a particular piece of luggage or a particular passenger. So that's the way law enforcement generally operates. They didn't in this case, and I would contend that, again, that shows that there was not probable cause to believe that to justify a search of every single piece of that luggage. They didn't have probable cause to believe that it would be found. Let me ask you this. Does it matter in this circumstance that, and correct me if I have this wrong, but that the officer came to this with some knowledge that this bus line was being used to transport drugs or there had been some intelligence to that aspect? And then you've got the bus driver misidentifying his destination, if I recall right. Doesn't that sort of factor into the totality? When you talk about 50 passengers and that sort of thing, if he didn't have that knowledge, your argument might be stronger. What do you think? Your Honor, I think, again, when you're looking at a probable cause analysis, you do have to look at the totality of the circumstances. You're correct, and that is one of the circumstances. Again, I don't think that is particularly relevant to the major points that I'm making, because, again, when you're looking at this specific dog sniff, that's the main issue there is whether this dog sniff provided probable cause to search every single piece of luggage under that bus. And I just don't think that it did, Your Honor. And I'd like to reserve the rest of my time, if I may. Thank you. Thank you. Mr. Wolfe. Yes, Your Honor. Thank you, Your Honors. Opposing counsel, may it please the Court. Benjamin Wolfe here, appearing for the United States Government. Before I begin my argument today, Your Honors, I need to plead error with respect to a citation in my brief. When citing the district court opinion of Barraza Maldonado, I did not state that the opinion was affirmed on other grounds from that which I cited it for. It was affirmed on the grounds of good faith reliance on federal circuit court precedent as opposed to the independent source doctrine, which is what I was citing it for, so I wanted to make sure to notify the court of that. I furthermore had the foresight to place that citation as one of my absent cases, further emphasizing it. As to my arguments, though, Your Honor, I'm asking the court to affirm the district court's finding that the officer had reasonable suspicion to expand the scope of the investigation, and once he did so, the ultimate discovery of the cocaine in Mr. Touton's bag was not fruit of the poisonous tree. The officer's actions in conducting this stop were reasonable under the Fourth Amendment. A traffic stop was supported by probable cause following too close, which is not contested in this case. After initiation, the officer was permitted to make routine inquiries of the driver under Olivera Mendez, and he was permitted to follow up on those inquiries in light of his training experience under LeBron. The officer is at liberty to question the driver and passengers as to their destination and purpose under Lincas. Those routine inquiries turned up the following information. Goodman, who I would point out to the court, is an experienced officer with 18 years of experience, 12 with the highway patrol, 6 with the local sheriff's department. Many of those 6 were in narcotics. Prior to the search of the bag, he had received specific intelligence in highway interdiction in the form of HIDTA summaries, the high-intensity drug trafficking areas, that indicated that this particular bus line was being used to traffic narcotics, and he had received those inquiries prior to the stop on November 6th. After pulling the bus over, the driver appeared visibly nervous under questioning, despite being a professional driver and having a CDL. And this was not a generic claim of nervousness. It was specifically articulated that his hands were trembling and his voice was nervous and shaky while looking for his license and registration. This was unusual in the experience of this officer, who had had dealings with commercial drivers before. He even cited specifically in the district court that, hey, these drivers often have experience with the Department of Transportation. They're more likely to come into contact with government. They shouldn't be this nervous. A lot of this, I'm not sure, is contested because the driver did consent to the search, correct to the luggage. I was wondering if, in following up on Judge Grunder's question to opposing counsel, that your position is that all of those circumstances are relevant to the dogs, whether or not the dogs alert where it alerted in the luggage compartment, whether these facts play into that somehow for the ability to search. Well, Your Honor, for the fruit of the poisonous tree analysis, I was meaning to suggest to the court that even – We're not there. Yes, Your Honor. You haven't gotten to there. Now you start before and now you jump to after the real issue. The judge's question is the real issue. Yes, Your Honor. If I may have Judge Grunder's question again, I apologize. Well, to what extent is the background information, including the driver's nervousness, how does that affect the analysis of the dog alert issue, that the general alert to the back of the bus did not give probable cause to search the individual passenger luggage? I don't think it does affect whether or not the dog alert. Of course it does. Otherwise, why did you – how can you say that? Well, Your Honor, in light of the sui generis nature of the dog – The general alert is some indication of drugs somewhere, right? That's absolutely correct. All right. Now don't you add that to the specific information from the Haida alerts plus the corroborating nervousness of the driver? Absolutely, when it comes to the decision. Well, isn't that the answer to the question? Yes, Your Honor. I would add, what's the impact if the opening of the bag was not an unlawful search? If there was nothing unreasonable at the point when he did see the tag and quickly shut the bag, what's the relevance of that to the dog alert question? If there was nothing unreasonable about the officer reaching into the bag and finding the false compartment, then there is no fruit of the poisonous tree analysis. Now, I do want to say, Your Honor, that – Why? You mean because the dog alert is irrelevant? No, Your Honor, because the dog's arrival on the scene was not derivative of any constitutional violation. You still have the question of whether there was enough to finally search or, as it turns out, I guess, tear apart the bag. Yes, Your Honor, and that goes back to California versus Acevedo and Wyoming versus Houghton. I mean the Supreme Court has gone through whether or not an alert to a compartment on a car is enough to search the bags on the interior of the car. Yeah, and that's just it, right? I mean, in those cases, the dog is alerting from the outside, right? And so then you've got probable cause to believe that there's something inside. We sort of have the inverse of that. We've already gotten into the compartment, right? And so the dog has an ability to distinguish. Does that distinguish these cases then, sort of whether the dog is sniffing from the outside versus whether the dog's already gotten in and is able to discern the different items? I see the court's inquiry. The testimony in the district court was that the odor that had previously been present in the luggage compartment had blown up because the luggage compartment doors were open for a period of about four minutes before the dog came. Whose testimony? That was Corporal Rapert. Who would have known that? Corporal Rapert. That's what he posited. And that was his speculation. That's what he posited based upon his training and experience. That's also what Roby Rhodes, the sergeant who is the certified dog trainer for all the dogs in the state of Arkansas. Well, this is after the fact hypothesizing, right? Yes, Your Honor. But Corporal Rapert did testify that the dog was, quote, unquote, in the odor of narcotics at the time that he was down there, that the whole compartment was infused with narcotics. And so to the extent that the dog was able to give – Yes, Your Honor. Because the scent – Corporal Rapert testified – Did he get it out of his nose or what? Well, the scent of the odor of narcotics had blown against the back luggage doors, and that's where it was strongest. So that's where the dog was – Had they taken apart the walls of the bus by then so they knew there wasn't more contraband there? No, Your Honor. They had not. Well, this is all hypothesizing after the fact. Well, the testimony in the district court and what the district court relied on was that the dog had alerted to the general luggage compartment. Factually, did the dog, as counsel says, after the general alert in the back of the bus, was he then taken to each bag? Your Honor, he was allowed to run through the bottom compartment of the bus. They did not remove the bags and walk the dog through the bags. They walked to each bag individually, as counsel seemed to suggest. Does the record reveal that? Well, what the officer testified to was that the dog was allowed up into the luggage compartment to sniff to try to locate the strongest scent of narcotics, and that is when the dog went to the back wall and was – I understand, but the counsel says then the dog sniffed the luggage specifically and was not interested. I haven't read that. I'll read the transcript. I'm just asking from your memory, what was the sequence? And if he was taken to each bag after alerting to the compartment, which bag was he taken to first? Well, Your Honor, he was allowed to inspect all of the bags. So he did not individually sniff each bag after the general alert? The officer tried to guide the dog through the baggage, and he kept going back to the compartment. I believe that the officer just let the dog into the compartment and he immediately went to the back bags, and he would not alert to any specific piece of luggage. The dog was off lead? The dog was on lead, but it was not a very deep compartment, Your Honor. All right. Let me change the facts a little bit. Yes, Your Honor. Let's say that there was no HIDA alert about this particular bus line. There's 50 people on the bus and 100 pieces of luggage. Dog goes in, gives a general alert. Can they search all 100 pieces in that? No, Your Honor. And the reason why I suggest that is because the Fourth Amendment to the Constitution is a test of reasonableness. And I think that one of the things that the court found in this case was that it was reasonable given the fact that there were very few bags. I mean, the fact that this is no more bags than would be a van. At what point does it become unreasonable? At 10 bags, at 15, at 20? At what point does it become unreasonable? Yes, Your Honor, and I do think that is a question for district courts and for courts to look at. I don't think applying a bright line rule to common carriers or the number of bags or the type of vessel or wagon or car is necessarily something to do. But in circumstances like these, in judging whether or not the officer's actions were reasonable, I think what we look to is that there were very few people on this bus, no more than would be in a minivan. Why is that relevant? I mean, because it's just more likely that one of the seven pieces is going to be the one? I'm struggling a little bit with just the pure number. Is it because it's easier? You can just go through seven as opposed to 100? Or you're more likely to hit on it, one in seven versus one in 100? Well, I can only say that the district court did rely on the fact that there were a very few bags here, and I think the— Well, rather than wing it on the specific question, let me come at it this way. In Judge Grunder's hypothetical, what could reasonably be done? In terms of a number of passengers, Your Honor? Well, in that situation, you've got 50 passengers and 75 bags in a luggage compartment where a dog is alerted. What can reasonably be done? I would submit that would most likely not be the particularity that would be needed. Wait, wait. Let's go back to our airport cases. Can't they just say you'll all have to wait while we process this? On an entire airline or an airport? Oh, can't they just detain the bag while they— Well, yes. Yes, Your Honor. You're all free to go, but your bags have to stay because we have sufficient suspicion to inquire more, or you can wait while we do that. They could have done that, Your Honor. Okay. Well, isn't that the answer? But the dog alerted on the luggage compartment of the vehicle in this case, and that was all the probable cause needed. And they searched every bag immediately? Yes, Your Honor. Which the innocent passengers probably appreciated because they got to go on their way. Yes, Your Honor. And the one with drugs in his luggage wasn't so happy. Yes, Your Honor. And following up on that point, there is no reason why a passenger in a bus should have a greater expectation of privacy than four or five people driving down the road in a minivan. Wait a minute. Don't forget the bag over the passengers. That's correct. But especially when you check your luggage and give it over into a Bailey's possession or care, physically remove yourself from the luggage, the idea that because you're on a bus that you have some greater expectation of privacy under Wyoming v. Houghton or California v. Acevedo when a dog alerts in a specific portion of the bus is not reasonable. But I do think a reasonable court could say 50 people, 100 people on a bus, if a dog has a general undifferentiated alert on a passenger airline or a cruise ship, that that might be unreasonable given the circumstances. But I think we go back to this. Additionally, as to the defendant's arguments about the alert, I wanted to make sure to notify the court that in this particular case there were three levels of alert. There is a profound alert, an indication, and a normal alert. The lowest level, the alert in this case it was testified to, does not provide probable cause. That's something only the handler can detect. The second level is a profound alert, which exhibits a change in the dog's behavior that any reasonable person can see from the outset. And then, of course, there's the final indication. It's our argument that United States v. Holloman forecloses the defendant's argument about whether or not the dog sniff established probable cause. Your Honor. Counsel, I had a note in my notes when I read the briefs that there was a video in this case. Is that right? That's correct, Your Honor. Defense Exhibit 2. And does it show the actions of the dog? You cannot see the action of the dog because of the position of the bus. But it's our position that the defense could have still established cueing had they subpoenaed the bus driver who was standing outside to testify as to the dog's behavior, an effective cross-examination. And, of course, they had the opportunity to submit follow-up briefing from their expert, and they declined to do so. Your Honor, just in closing, the district court found that Goodman's suspicions had already been raised before receiving consent, and that he would have called for a canine unit even if he had not discovered the false bottom. This is a factual finding. The court also found that Hemi's presence and alert was unaffected by any previous search. This is also a factual finding. That was based upon the complete lack of evidence of cueing and the interaction between the officers running the entire bottom of the bus as opposed to one bag in particular. The appellant is essentially asking the court to adopt a presumption of cueing. I see that my time is up. Thank you, Your Honors. What presumption? A presumption of cueing on the part of the handler. Your Honor, one of... Oh, okay. Yes. Thank you. I'll give you a minute. I think we've got the issues, but... Thank you, Your Honor. I just want to take the opportunity to briefly talk a little bit more about one of the cases cited by counsel, Wyoming v. Houghton or Houghton. In that case, the Supreme Court discussed the fact that in a normal vehicle, a car passenger will often be engaged in a common enterprise with the driver and have the same interest in concealing the fruits or the evidence of their wrongdoing. I think that specific point distinguishes that kind of case from this case where you have multiple unconnected people with no suggestion of common enterprise who all have individual privacy interests. I think that is a reason to treat a situation with a commercial bus differently than a small enclosed vehicle where all the people may be in some kind of common enterprise with each other where the driver or whoever the law enforcement has suspicion about has the opportunity to perhaps conceal something in a passenger's purse, which is what happened in that case. There were, I believe, drugs concealed in the passenger's purse. In this case, you have the multiple privacy interests at stake from all of the different people on the bus, and a general alert to the bus or to a compartment of the bus just simply does not provide probable cause to believe that you're going to be able to search every single piece of luggage or every single person or whatever on that bus. Would they detain the bags like they do at airports? If they have reasonable suspicion, Your Honor, that's the standard for detaining something. I don't think they had reasonable suspicion as to all of the... You're arguing no probable cause. That's exactly my question. Do they have sufficient suspicion to detain the bags? I would submit that they don't, Your Honor. I know you have to. Right. Thank you, Your Honors. Very good, counsel. Fourth Amendment issues are always interesting, and they've been well-argued. We'll take it on with that.